# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

---

(302) 658-9200
(302) 658-3989 FAX

Ethan H. Townsend
(302) 351-9343
etownsend@mnat.com

July 25, 2014

**BY CM/ECF AND HAND DELIVERY**
The Honorable Leonard P. Stark
United States District Court
844 N. King Street
Wilmington, DE 19801-3555

> Re: *Parallel Networks* Related Actions, C.A. Nos. 13-1412-LPS, 13-1413-LPS, 13-1414-LPS, 13-1476-LPS, 13-1477-LPS, 13-1481-LPS, 13-1943-LPS, 13-2001-LPS, 13-2051-LPS, 13-2085-LPS: Proposed Protective Order Dispute

Dear Chief Judge Stark:

Defendants submit this responsive letter brief regarding the disputed provisions of the proposed protective order, which Plaintiff attached to its July 24 letter. (D.I. 25, Ex. A.)

**Section 27 – Scope of Prosecution Bar:** The parties only dispute (1) whether the scope of the prosecution bar should extend to post-grant proceedings, and (2) whether an ethical wall should be required.

*First*, the inclusion of post-grant proceedings within the scope of the bar is necessary to prevent Defendants' confidential information from being misused – even if inadvertently – to amend, adjust, or otherwise impact claim scope before the PTO. Plaintiff acknowledges that risk by agreeing that the "purpose of a prosecution bar is to preclude the counsel from using confidential information that is learned in the litigation in crafting new claims." (D.I. 25 at 3.) Post-grant proceedings, such as the new AIA proceedings and the prior reexamination procedures, provide a patentee with the opportunity to amend or substitute claims (or to otherwise impact claim scope though argument) and thus carry an equal risk as the prosecution of patent applications and re-issue applications. Accordingly, and for good reason, courts have extended prosecution bars to cover reexamination and new AIA review proceedings. *See, e.g.*, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, No. 11-6391 (D.I. 199) (N.D. Cal. June 11, 2013) (granting motion to amend protective order to apply prosecution bar to cover IPRs); *Prilotec, Inc. v. Scentair Techs., Inc.*, No. 12-483 (D.I. 62) (E.D. Wis. May 17, 2013) (barring litigation counsel from participating in IPRs). Likewise, in *ReefEdge Networks, LLC v. Aruba Networks Inc.*, this Court resolved a similar dispute over the breadth of the protective order by ruling that PTAB review and reexamination proceedings should be included within the scope of the prosecution bar. *See, e.g.*, D.I. 43 ¶ 19 (protective order) and D.I. 49 at 33-34 (hearing) in *ReefEdge*, C.A. No. 12-1042-LPS ("And I think it follows as well that any PTO proceedings includes any PTO proceedings including the more recent ones created under the AIA.").

The Honorable Leonard P. Stark
July 25, 2014
Page 2

*Second*, an ethical wall is an important element to implement a prosecution bar effectively because it safeguards against the risk that litigation counsel receiving Defendants' confidential information will inadvertently disclose that information to counsel prosecuting patents or otherwise acting in the PTO. Merely preventing trial counsel from being directly involved in amending claims does not provide meaningful protection.[1] As the Federal Circuit explained in *Deutsche Bank*, the risk of inadvertent disclosure is a real danger because "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Ams.*, 604 F.3d 1373, 1381 (Fed. Cir. 2010). It is virtually impossible for the human mind to seal off confidential information about the accused products (and the necessary scope the claims must have to ensnare them) when discussing, for example, the types of arguments that could be made and positions that could be taken in an IPR regarding distinctions over prior art. Plaintiff's proposal ignores that risk and goes so far as to allow litigation counsel to "consult[] and "assist[]" counsel acting before the PTO. Balanced against the substantial risk described in *Deutsche Bank*, the burden on Plaintiff of an ethical barrier is slight, particularly given that Plaintiff has multiple attorneys representing it, including an entirely separate law firm (Baker Botts LLP) representing it in PTO matters; Baker Botts in fact prosecuted the patents-in-suit. For those reasons, this Court in *ReefEdge* approved an ethical wall that was identical in substance to the wall Defendants have proposed here. *See* D.I. 43 ¶ 19 (protective order) and D.I. 49 at 32-33 (hearing) in *ReefEdge*, C.A. No. 12-1042-LPS (and related cases) ("[C]ounsel, like all of us, is human" and this creates the risk that "inadvertently, perhaps even unknowingly, counsel could be unfairly making use of confidential information in the context of a proceeding before the PTO.").

**Section 14(d)(iii) – Source Code Logging:** Defendants are all high-tech companies. For each Defendant, its source code is among the company's most important asset. Maintaining a record of who has accessed their source code and when it was accessed is essential to manage the disclosure of their source code and to trace the source of any inadvertent disclosures.

Thus, Defendants propose that *all* individuals who access the source code should appear on the log. Plaintiff has not explained why identifying on the log outside counsel and their employees – who in this instance include technical experts who otherwise would be subject to the agreed restrictions on outside technical experts – would be burdensome or unfair,[2] nor does any persuasive reason exist for treating outside counsel and their employees differently than technical experts or any other individuals involved in the litigation.[3] Indeed, it seems unlikely that outside counsel and staff would have any particular need to access the original printed pages of source code on a regular basis (instead, that job would be largely done by the technical

---

[1] Plaintiff states this District has recognized the need for trial counsel to discuss prior art with separate counsel. But the trial transcript cited by Plaintiff does not support this – the Court merely states that trial counsel "cannot participate in the competitive decision making." (D.I. 25, Ex. D at 20.)

[2] There is no burden. Signing in and out before and after reviewing the source code is trivial.

[3] Plaintiff's assertion that attorneys are under other ethical obligations does not address the need for a complete log of those who accessed the code to reconstruct the source of a disclosure.

The Honorable Leonard P. Stark
July 25, 2014
Page 3

expert). More to the point, the goal of avoiding repeated, routine access is precisely the reason to treat these materials differently than other materials, *i.e.*, to have a constant reminder (via a set procedure) that printed source code should *not* be indiscriminately accessed and handled, but instead accessed only when necessary, thereby minimizing the chance of an inadvertent mishandling of the material. Given the extreme sensitivity of the material, and the minimal burden involved, outside counsel and their employees should be included on the log.

Defendants propose that, in addition to the date of access, each individual's time and duration of access should be recorded. This is standard practice for source-code logs both inside and outside of litigation. The purpose is to leave an "audit trail" in the event a problem arises so that events leading up to the issue can be reconstructed and proper remedial action taken. Again, Plaintiff has not identified any specific burden that would arise from the recording of that standard information.

**Section 18 – Export Control Requirements:** The disagreement here arises out of each party's indisputable obligation to comply with U.S. Export Administration Regulations ("EAR") for certain types of technical information in the possession of Defendants that will be produced in this case. Plaintiff's contention that complying with those obligations would be "unduly burdensome" and that its EAR obligations would somehow be released simply by an order to comply with a protective order confirms Defendants' concerns. (*See* D.I. 25 at 2.)

To be clear, all of the accused products (and, thus, the subject matter of the document production from Defendants) fall within the EAR's category of "telecommunications/networking equipment," subjecting them to some form of export control. *See* 15 C.F.R. § 774 Supp. No. 1 Cat. 5. As a result, many of Defendants' technical, non-public documents and information associated with those products is restricted by federal regulation from being disclosed to nationals of countries other than the United States and Canada without U.S. government authorization. *See* 15 C.F.R. §§ 774 Supp. No. 1 Cat. 5; 738 Supp. No. 1. Although the regulations are referred to as "export control," the restrictions exist even if the foreign nationals are located in the United States. *Id.* In light of those regulations, Defendants' protective-order proposal would have the party receiving such information acknowledge its EAR obligations and agree to certain compliance mechanisms, including, for instance, the maintenance of adequate controls to prevent unauthorized foreign nationals from accessing a producing party's confidential information. The proposal is identical in substance to the "Export Control Requirements" provision this Court approved in *ReefEdge*. *See* D.I. 43 ¶ 18 (protective order) and D.I. 49 at 35-36 (hearing) in *ReefEdge*, C.A. No. 12-1042-LPS (and related cases).

Although Plaintiff did not dispute in the meet-and-confer that it will be obligated to comply with EAR (instead arguing that the proposed language was unnecessary), Plaintiff appears to have reversed course in its letter. Apart from Defendants' reasonable concern about whether Plaintiff will comply with its EAR obligations, Plaintiff's approach would put Defendants in the position of producing documents directly to a party (Plaintiff) that may well give access to those documents to foreign nationals. The proposed restriction will ensure that Defendants will not disclose information in a way that violates the EAR, even if the disclosure is otherwise permitted by the protective order. To be clear, Defendants' proposal does not impose on Plaintiff any burden and obligation beyond that already present by virtue of the EAR. Accordingly, Defendants believe that the protective order, as the procedural vehicle that implements the restrictions attendant to the production of documents in this case, should contain the acknowledgement on this restriction.

The Honorable Leonard P. Stark
July 25, 2014
Page 4

                                              Respectfully submitted,

                                              */s/ Ethan H. Townsend*

                                              Ethan H. Townsend (#5813)

cc:      Clerk of the Court
           All Counsel of Record